| CEFCU® | | | RETAIL INSTALLMENT CONTRACT | | |
|---|---|---|---|---|---|
| P.O. Box 1715 | | 605 | (Motor Vehicle) | | ACCOUNT NUMBER |
| Peoria, IL 61656 | | | SIMPLE INTEREST | | |
| (ASSIGNEE) | | | | AMOUNT OF LOAN 34465.47 | DATE 04/26/17 |

**Buyer (and Co-Buyer)** – Name and Residence Address (include: County, Zip Code, Phone and Social Security No.)

PAMELA COOK
3260 E FITZGERALD RD DECATUR IL 62521

Seller and Creditor, Corporate, Firm, or Trade Name and Business Address
CROWN NISSAN OF DECATUR
165 W PERSHING RD
DECATUR, IL 62526

Motor Vehicle Retail Installment Contract Buyer (which means the undersigned Buyers and Co-Buyers, jointly and severally) having been quoted both a time sale price and a lesser cash price hereby purchases from Seller and Seller hereby sells to Buyer on a time price basis, upon the terms and conditions set forth on the face and reverse sides hereof, the following property (herein called the "Property") delivery and acceptance of which in good order hereby are acknowledged by Buyer.

| NEW OR USED | YEAR AND MAKE | SERIES | BODY STYLE | NO. CYL. | TRUCK TON CAPACITY | VEHICLE IDENTIFICATION NUMBER | IGNITION KEY NUMBER | COLOR | PROPOSED USE |
|---|---|---|---|---|---|---|---|---|---|
| USED | 14 CHEVR | | CP | | | 2G1FK1EJ9E9146785 | | RED | X Personal / Business / Agriculture |

- ☐ Automatic Trans
- ☐ 4 Speed
- ☐ Cruise Control
- ☐ Power Steering
- ☐ Power Brakes
- ☐ Diesel
- ☐ Power Seat
- ☐ Power Windows
- ☐ T-Top
- ☐ Air Conditioner
- ☐ Radio
- ☐ Tape Deck
- ☐ Stereo
- ☐ Bucket Seats
- ☐ Sunroof
- ☐ Fuel Injection
- ☐ ___
- ☐ ACC Group No. ___

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost you.) | AMOUNT FINANCED (The amount of credit provided to you or on your behalf.) | TOTAL OF PAYMENTS (The amount you will have paid after you have made all payments as scheduled.) | TOTAL SALE PRICE (The total cost of your purchase on credit, including your downpayment of $ 41082.48) |
|---|---|---|---|---|
| 5.94 % | $ 6617.01 | $ 34465.47 | $ 41082.48 | $ 41082.48 |

Your payment schedule will be:

| NO. OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 72 | $ 570.59 | 30 MAY 2017 |
| N/A | $ N/A | N/A |

**ITEMIZATION OF THE AMOUNT FINANCED**
$ 28480.00 Cash Price
$ _____ Less cash down payment
$ 28480.00 Unpaid balance of cash price
$ N/A Less trade-in
$ _____ Prior balance this Seller
$ 172.15 Documentary fee

AMOUNTS PAID TO OTHERS ON YOUR BEHALF
Pay off of prior loan
$ N/A
To _____
$ 1988.32 License, title and taxes
$ 3000.00 to MPP
$ N/A to _____
$ 800.00 to OUCC
$ N/A to CUNA
$ N/A to N/A
$ 34465.47 Amount Financed

DESCRIPTION OF TRADE-IN
N/A N/A
(Year and Make)
N/A
(Serial Number)
$ N/A
(Gross Allowance)
$ N/A
(Amount Owing)

**CREDIT INSURANCE:** Credit Life and Credit Disability insurance is voluntary and not required in order to obtain this loan and will not be provided unless you sign and agree to pay the additional cost. Please read the complete Credit Insurance Application and Certificate on the "Debtor Copy" prior to signing this authorization.

| TYPE | PREMIUM | COVERED MEMBER(S) |
|---|---|---|
| CREDIT LIFE ☐ Single ☐ Joint* | $ N/A | I/We want Credit Life Insurance ___ Signature ___ Signature |
| CREDIT DISABILITY ☐ Single ☐ Joint* | $ | I/We want Credit Disability Insurance ___ Signature ___ Signature |

*NOTE: Two signatures are required if Joint Coverage is selected.

You may obtain property insurance from any insurer you choose that is acceptable to CEFCU®

**Security:** You are giving a security interest in the goods or property being purchased and in your shares and/or deposits in CEFCU; collateral securing other loans with CEFCU may also secure this loan.

**Late Charge:** If any payment is ten (10) days or more late, you may be charged a late charge of $10.00 or 5% of the payment due, whichever is greater.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See your contract terms on face and reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

For details of possible refund for Credit Life or Credit Disability, see notice on reverse side.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

**NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE**
If a charge is made in the ITEMIZATION OF AMOUNT FINANCED for credit life insurance and if such insurance is to be procured by Seller or Assignee, the undersigned takes notice that decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer(s) whose signature(s) appear above, subject to acceptance by the Insurer and issuance of a certificate by
CMFG LIFE INSURANCE COMPANY, P.O. Box 391, 5910 Mineral Point Road, Madison, WI 53701-0391

_____
(Insurer)
_____
(Home Office Address)

FOR DETAILS SEE NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE ON REVERSE SIDE OF BUYER'S COPY

**Payment Schedule:** Buyer hereby agrees to pay to Seller the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 5.94 % per annum from date until maturity in 72 installments of $ 570.59 each and a final installment of $ N/A, beginning on 30 MAY 2017, _____ and continuing on the same day of each successive month thereafter until fully paid.
All payments shall be first applied to accrued interest to day of actual payment with the remainder applied to the unpaid balance of the principal. The amount of the final installment will be adjusted to reflect any accrued and unpaid interest resulting from early or late payment of any installments.

> **NOTICE TO THE BUYER:** 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charges.

**CO-BUYER:** A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the vehicle's title. By signing below as Co-Buyer, I confirm that I will actually receive possession of the vehicle and will use it, or that I am the spouse of the Buyer, or that I will be listed as an owner on the vehicle's title. Note: If the Co-Buyer is the parent or spouse of the Buyer, CEFCU requires that they be listed as an owner on the vehicle's title.

Buyer acknowledges receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledges receipt of completed copies of this contract, the Explanation of Guarantor's Obligation and the Notice to Cosigner before signing the contract and having signed same.

**Signing Instructions:** If a parent, spouse or any other person is or will be listed as an owner on the vehicle's title is a Co-Buyer, sign on the Co-Buyer line below. A Guarantor or Co-Signer will sign on the Guarantor line below.

Dated: 26 APR 2017
CROWN NISSAN OF DECATUR

By: _____ SELLER _____
TITLE

RETAIL INSTALLMENT CONTRACT

Buyer Signs: Pamela Cook
Co-Buyer Signs: _____

Guarantor _____
I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.

ORIGINAL

EXHIBIT A

## ADDITIONAL AGREEMENT OF BUYER

1. This contract contains all of the agreements of the parties relative to the retail installment sale, and no representations, promises, statements or warranties, express or implied, have been made by Seller unless contained herein. This contract may be assigned by the Seller.

2. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer of holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions hereof.

3. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice-but may not have a deductible amount in excess of $500.00. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interests may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interests of Buyer and the holder, or either of them.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State of Illinois without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal (whether or not disputed by Buyer); or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business or property, or Buyer shall make an assignment for benefit of creditors; or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract; or (9) if Buyer shall default under any other contract or loan agreement with the holder of this contract, the holder may declare all installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable without notice or demand. Buyer agrees that it shall be an event of default under this contract upon the occurrence of any of the events described in this paragraph or if Buyer fails to perform any other obligation in this contract.

6. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorney fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of repossession, the Buyer may, within 21 days, redeem to motor vehicle from the holder by tendering (a) the total of all unpaid amounts including any unpaid delinquency or deferral charges due at the time of the tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due, and (c) any reasonable costs or fees incurred by the holder in retaking the motor vehicle. The tender must be made in cash, certified check or money order. By law, Buyer has the right to redeem the motor vehicle only once. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative. Buyer agrees to pay all costs incurred by the holder of this contract to collect any amount owed under this contract or to enforce any obligation under this contract, including, but not limited to, reasonable expenses of retaking, holding, preparing for sale, processing and selling the motor vehicle and reasonable attorneys' fees, expenses and court costs incurred in connection with demands and/or negotiations, in court proceedings, on appeal, in post-judgment collection efforts and/or in bankruptcy proceedings.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. The Buyers agree that they are each primarily and jointly and severally liable hereon and that the receipt of the consideration hereof by any one of the Buyers shall constitute the receipt thereof by all of the Buyers. The Buyers and the Guarantor agree that no release of one or more signatories of this contract or any security for this contract shall release any other signatory. The Buyers and the Guarantor consent to any and all renewals or extensions of this contract.

9. Buyer agrees, if Buyer is late in making a payment, to pay the holder of this contract the late charge shown in the Federal Truth in Lending Disclosures on the reverse side.

10. You authorize and direct your employer to deduct from your paychecks the amounts necessary to satisfy the installments due on this loan or account, and to pay the amounts deducted to the credit union. You authorize the credit union to provide your employer with a copy of this Contract, and also with such additional information as may be needed to effectuate the payroll deduction. Your authorization of payroll deduction is strictly voluntary and may be terminated at any time that you choose.

11. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

Security interest: To secure the payment of the total of payments and all other amounts due or to become due under this contract, and any other loans you have with CEFCU now or in the future and any other amounts you owe CEFCU for any reason now or in the future, you hereby grant seller and assignee a security interest in the motor vehicle being purchased and in your shares and/or deposits in CEFCU. Notwithstanding the foregoing, your shares and/or deposits in CEFCU will not secure any CEFCU credit card loan with CEFCU unless you agree to grant CEFCU a security interest in your shares and/or deposits in connection with the credit card loan.

Rebate for Prepayment: Buyer may prepay this contract in full at any time before maturity of the final installment.
If insurance premiums were prepaid, as shown above, Buyer will receive a refund from CEFCU on the basis of the "Rule of 78's".

Receipt of Buyer's Guide: If this contract evidences the sale of a used motor vehicle, (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used motor vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISION IN THE CONTRACT OF SALE.

NOTICE: ANY HOLDER OF THE CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM
(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OR YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.
(2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT CEFCU TO SEE IF A REFUND IS DUE.

DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

## ASSIGNMENT OF DEALER

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to CEFCU, P.O. Box 1715, Peoria, Illinois 61656, all of Seller's right, title and interest in and to this Retail Installment Contract and its security interest in the motor vehicle described herein. To induce Assignee to purchase the contract, Seller represents and warrants that (1) the contract is valid, genuine and correctly states the terms of the transaction between Seller and Buyer; (2) the motor vehicle has been delivered to and accepted by the Buyer; (3) the down payment was paid in full, in cash or in trade, and no part was loaned to Buyer by Seller; (4) Seller has good title to and the right to sell the motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) Seller has the right to sell and assign this contract to Assignee; (7) all Buyers have legal capacity to contract; (8) on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract; (9) prior to any Guarantor, if any, signing the contract, Seller delivered to the Guarantor a completed copy of the contract, an Explanation of Guarantor's Obligation and a Notice to Cosigner and the Guarantor, if any, signed the contract, the Explanation of Guarantor's Obligation and Notice to Cosigner; (10) Seller has complied with all requirements of the Federal Truth in Lending Act and Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (11) on the date of this contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the Certificate of Title covering the motor vehicle, procured from the Buyer a signed Application for a new Certificate of Title to be issued to Buyer and mailed to Assignee showing correctly the date of the contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State all of said documents with the required fee; (12) the motor vehicle has not been used as a taxi, for commercial transportation or by law enforcement agencies; (13) the transaction was made at Seller's place of business and was not a door-to-door sale subject to the 3 day cooling off period under Section 429 of Federal Trade Commission Trade Regulation Rules or Section 2B of the Illinois Consumer Fraud Act; and (14) the transaction does not involve a straw purchase where the Buyer uses or allows his or her credit to be used for the purchase of the motor vehicle unless the Buyer will either: (a) receive possession of the motor vehicle and will use it; or (b) be listed as an owner on the motor vehicle's title.

Dated: 4/22/17

Assignee: CEFCU
P.O. BOX 1715
PEORIA, IL 61656

Seller: **CROWN MOTORS, LLC**
By: _____
     Authorized Signature         Title

## REPURCHASE AGREEMENT

If any of the representations or warranties in the Assignment of Dealer are breached, in the event a claim or defense which the debtor could assert against the Seller is asserted against Assignee at any time, Seller agrees to repurchase this contract for cash at a price equal to the net amount remaining unpaid on the contract and all other indebtedness then due from Buyer thereon, together with reasonable attorneys' fees, costs and expenses incurred by Assignee; and, Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the manufacturer to Buyer.

Dated: 4/22/17

Seller: **CROWN MOTORS, LLC**
By: _____
     Authorized Signature         Title